Our final case for this morning is Lloyd v. Mayor of the City of Peru. Well, it looks like Peru to me, but then I think of Cairo and other sorts of places. If it's Peru, then Mayor of the City of Peru, Mr. Potters. Good morning, your honors. May it please the court. This case should be remanded back to the trial court for two reasons. The first reason relates to an issue related to advancement and promotion. The City of Peru did not include the issue of advancement promotion in its motion for summary judgment or its supporting memorandum. Although Lloyd, at least four times in four different paragraphs, raised the issue of advancement and promotion, to which the City of Peru responded in the denial. But he doesn't raise it. He raises it in passing. He doesn't really present it as an independent ground. He doesn't, for example, specify any jobs that he applied for. He doesn't specify who got them. He doesn't specify, you know, when he was turned down. When you're complaining about promotions, you have to say, I applied for the job of, you know, X. You know, a promotion to the next rank of the police department, for example. You can't just say I wasn't promoted. It's a very subjective process. Well, but you have to focus. What did you want? What was the promotion? Because if you never applied, you can't say that they discriminated against you. You never applied. Mr. Lloyd, at all times, as did the other police officers, let it be known that he wanted to advance and be promoted. But he has to apply. That's why this particular theory is not, or at least that's why the district judge thought that this theory was not properly presented in your case. Certainly you could see the termination argument, but you can't, without specifying what you applied for or that you even applied at all, then there's no duty on the employer to go out there and find you. Every other patrolman who advanced who was white did not specifically apply for a position. Well, how do we know that? What evidence is there in the record of that that would be competent evidence? There is testimony in the file from the current chief, Meeks, who worked with Lloyd. There's evidence in the record from a sergeant who used to work for the city of Peru.  Lloyd affirmed the fact that Lloyd was the only person, based on the observation, who was not given, through the subjective process, an opportunity to advance. Lloyd started in 2003 as in an entry-level position. By the time he was terminated in March of 2015, he was still in an entry-level position. All of the other employees, it was a very extremely subjective process. No one made an application. The chief just simply advanced persons in the system. With respect to the other issue, the termination issue, the trial court applied the wrong standard with respect to deciding whether or not Lloyd was terminated based on his race or for retaliation. What the court should have done was looked at... I think Judge Rovner has a question. Yes, Your Honor. I'm sorry. Does Mr. Lloyd have any evidence tying the discriminatory statements of the two supervisors to any decision to fire him? In other words, were the statements close in time to the termination? Were they close in time to any discipline? Is there anything there? With respect to the chief who terminated Lloyd and who subjected Lloyd to the bulk of the disciplinary action that resulted in his termination, this chief, and there is evidence in the file that the chief referred to Lloyd as, with the word, but as Ortiz v. Werner states, the trial court in an employment discrimination case is supposed to aggregate all the possibilities to determine whether or not an act of racial discrimination or retaliation occurred. That did not occur in this case. If that had occurred, the court would have been able to identify five particular possibilities, the first of which was the composition of the workforce. The composition of the workforce at the time that Lloyd started was white. At the time that he was terminated, it was white. With respect to replacements, the person who replaced Lloyd were all white males and younger than him. The second part of the possibility, it relates to Lloyd's stagnant status as a patrol officer, which is what he was 13 years later at the time that he was terminated. The third part of this possibility relates to his work performance. The current chief had moved up in several positions and eventually is now the current chief, worked with Lloyd directly. This is Meeks, right? Yes. Worked with Lloyd, and he described Lloyd as truthful, honest, performed quality paperwork, was professional and respectful to members of the public and to coworkers. A sergeant who worked with Lloyd also stated that Lloyd's job performance was as good as any other employee's job performance. But what happened 13 years later relates to an incident that occurred when Lloyd was disciplined and he complained about it. But so I don't get off track, I'll deal with the fourth possibility, which relates to the race of bias that I mentioned previously. The chief, at the time that Lloyd accumulated a boatload of disciplinary actions, this was the same chief who had previously referred to Lloyd as a boy, and we contend that he was racially biased and was more accepting of the harsh disciplinary action that Lloyd was subjected to as well as the termination. The fifth part of the possibility is the frequency, the severity, and the timing of the disciplinary actions that were given to Lloyd. Lloyd and the city of Peru cite the fact that other white employees were given disciplinary action and were terminated. But if you really analyze the differences, well, those white police officers had a disciplinary record over an extended period of time. Plus, you look at individual aspects of disciplinary actions, they were much more severe than that record of Lloyd. In 2008, Lloyd had one disciplinary action where he ran an IDAC on himself. In 2010, he had one disciplinary action. And in 2013, he had two disciplinary actions. These were all low-level disciplinary actions. But then on August 18, 2014, Lloyd was disciplined by Chief Rainey for being five minutes late to a mobile data training class. Well, Lloyd complained that he was disciplined, but another police officer who was white, who was also late for that same mobile data training, was not disciplined. Well, Lloyd submitted a written complaint in September of 2014. If you look at the disciplinary action that occurred thereafter... Right, I understand. Your argument is that it accelerated after he submits that complaint. And from there, you have your retaliation argument. If you want to save some rebuttal time, this would be a good time to do it. Okay. All right. Thank you. Ms. Havnas. Good morning. Thank you, Your Honors. Julie Havnas for the Apple East. The district court correctly found that Mr. Lloyd did not, first of all, carry his burden of proof on the prima facie case. He did not show that he was meeting... Does the record contain any evidence of the disciplinary records or qualifications of the white officers who were promoted? Not of the ones that were promoted, no. But we do include the ones that were also terminated. I just have one other question. Yes. Does the record reveal whether there was a department policy to pat down and search an officer prior to a termination hearing? I mean, we know from recent news in Aurora that terminations, you know, can be fraught events with the potential for violence. But I am curious if the record tells us that this was the usual procedure or if he was singled out. There is no evidence in the record about any other cases. So I don't know that there's no evidence of a policy or procedure either way. Okay. We've outlined for the court the discipline for Mr. Lloyd going back to 2008, which shows... But the pace does seem to pick up. I mean, there are some small things, and then all of a sudden he's getting written up for five things all at once. I think if you look at also the other officers that were terminated, the same thing was happening. This is a chief who kind of came in and decided, I'm going to follow this disciplinary matrix. We are going to start imposing the discipline that should be imposed and following this matrix. So I think if you look at the other officers, it's the same situation. This is Rainey? Yes, Rainey. So he has not shown that he was meeting the city's legitimate employment expectations at the time. He also has not shown any comparators at all. This goes partly to the promotion issue, but to the termination issue, he hasn't shown a single officer who is similarly situated to him and that was treated more favorably. It was kept on, in other words. I mean, you show that there were the five, if I remember, who were terminated. Right, right. So he hasn't shown a single comparator, and that is the minimum that the court requires in these cases. I agree with Your Honor, there was no independent claim brought for a failure to promote. However, if there was, the court did address that at the summary judgment hearing. He asked for that evidence and was given no evidence of any application for a promotion. Who else applied? Who else was given the promotion? What their qualifications were? Again, that's what's required in a prima facie case. Even a conversation. I gather that the theory that Mr. Potters is advancing is that there was no formal process in this particular police department that if a position needed to be filled, it was just somebody got tapped in the shoulder and it was filled. But I suppose what I would wonder is to what extent does the record show that Mr. Lloyd stated to somebody in a position of authority or in some other way communicated his interest in promotion. Right. There is no evidence in the record that he ever did that. And that, again, is a minimum what the court does require. I think mainly what the appellant is arguing is that the discipline wasn't fair to him and that the chief didn't look at him the way he should have. But, again, that's not the standard. His assessment of his performance is not the standard. You have to look at it from the employer's perspective. He has evidence from the employer's perspective that he's doing well. Well, that's the current chief. Chief Rainey was the chief at the time who made the decision. The current chief's assessment really is not relevant because he was not the decision-maker at the time. Well, he was in the department, though. He was in the department, yes, but he was not chief at the time. So, again, there are multiple cases we've cited about that. And, again, the final point is that the appellant has not shown pretext for discrimination or retaliation. That is his burden under McDonnell, Douglas, and even Ortiz still. So there is no evidence of pretext here. So, for these reasons, we'd ask that the district court's judgment be affirmed. All right. Thank you. Mr. Potters. The big problem with this case is the narrow focus on McDonnell, Douglas, which the court stated in Ortiz v. Warner that it should not be the case. The evidence, based on the evidence, Lord can establish a prima facie case with respect to the termination or the retaliation. With respect to the termination, Lord was a member of a protected class. He was qualified. Although he was qualified, he was terminated, and white employees were hired after he was terminated. With respect to retaliation, Lord was a member of a protected class. He was subjected to adverse... He complained, and subsequent to that, in a relatively short period of time, he was subjected to adverse action, which is the termination. If, again, if the trial court had tried to aggregate all of the possibilities, it would have found the likelihood of employment discrimination in this case. All right. Well, thank you very much, then. Thanks to both counsel. We will take the case under advisement.